**BROTHERHOOD OF RAILROAD TRAINMEN, an unincorporated association,**
and
**B. Grady Byington, Plaintiffs,**
v.
**CENTRAL OF GEORGIA RAILWAY COMPANY, a corporation, Defendant.**

Civ. A. No. 1809.

United States District Court
M. D. Georgia,
Macon Division.

Dec. 14, 1961.

Wayland K. Sullivan, Cleveland, Ohio, E. S. Sell, Jr., John D. Comer, Macon, Ga., for plaintiffs.

Julian C. Sipple, Savannah, Ga., H. D. Russell, Macon, Ga., for defendant.

BOOTLE, Chief Judge.

This petition for injunction alleges this case. The Brotherhood of Railroad Trainmen is the bargaining representative of the craft of Railroad Trainmen employed by the defendant. Mr. Byington is the Chairman of the General Grievance Committee for the Brotherhood on the property of the defendant and is a full-time salaried employee of said General Grievance Committee having requested and having been granted a leave of absence from the Central in accordance with the schedule agreement between the Brotherhood and the Central, reading: "Trainmen accepting positions with the Brotherhood of Railroad Trainmen may retain their seniority rights", said leave of absence having been granted September 1, 1958. Mr. Byington last served the Central in the capacity of conductor and the Order of Railway Conductors' agreement with the Central contains a provision substantially identical to that just quoted from the Trainmen's contract. Article 31 of the Trainmen's contract reads as follows:

"ARTICLE 31
"INVESTIGATIONS AND DISCIPLINE

"No trainman or yardman will be demerited, suspended, or discharged without a fair and impartial trial before the Trainmaster or the Superintendent. They will be allowed to be present and hear the evidence. If desired, they may have one or two employees of their own selection with them and they will be allowed to ask questions bearing on the case; they will also be allowed to remain after the investigation and discuss the points in the case with officials. In case of discipline, they will be notified in writing within five (5) days after investigation. If exonerated, they will be paid for lost time and will be notified in writing as soon as possible. Discipline will be applied uniformly, commensurate with the facts in the case, without distinction as to color.

"Upon request, the General and Local Chairman will be furnished with a copy of the investigation where discipline is applied."

Notwithstanding the fact that Mr. Byington is on said leave of absence, the defendant, through its superintendent, has served written notice upon Mr. Byington in accordance with said Article 31 to be present for investigation "to hear the evidence in cases which involve your efforts to prevent or discourage employees of the Central of Georgia Railway, or survivors of such employees, from making settlement of claims involving personal injuries to those employees. You are charged with gross disloyalty to the Central of Georgia Railway by inciting and promoting law suits against the company involving personal injuries to its employees, and for improperly making unsolicited calls on persons for the purpose of inducing or encouraging law suits against this com-

pany." The complaint alleges that the aforesaid charges have been preferred against Mr. Byington as the result of a conspiracy by and between the Central, its superintendent and other officials of the Central whose names are unknown to the plaintiffs "for the purpose of discrediting the plaintiffs in the performance of their duties as craft representative, and as General Chairman, respectively, under the aforesaid Railway Labor Act, and for the purpose of interference, influence and coercion, all more specifically proscribed by Section 2 Third of said Act"; that as craft representative both Mr. Byington and the Brotherhood have for a long period of time represented employees of Central during investigations when such employees were charged with misconduct by Central, pursuant to said Article 31; that Central by its charges against, and its proposed investigation of, Mr. Byington intends to dismiss him as an employee and thereby to disqualify him as a representative of employees in investigations of alleged rule violations and thereby to hamper, impede and hinder the plaintiffs in the performance of their duties as craft representative and as General Chairman, "thus interfering, influencing and coercing the trainmen employees in their free choice of their craft representative and their General Chairman;" that under the applicable rules a discharge of Mr. Byington would be effective instanter, there being no provision for supersedeas pending the determination of the validity thereof; that unless prevented the defendant will proceed with its intended investigation and its said conspiracy and the plaintiffs will be irreparably injured and damaged, and that there is no adequate remedy at law.

Upon presentation of the complaint a temporary restraining order without hearing was entered October 31, 1961, and by agreement of counsel remains in force until disposition of the defendant's motion to dismiss upon the grounds that: (1) this court has no jurisdiction to entertain the complaint and to do so would contravene the provisions, the intent and the purpose of the Railway Labor Act; (2) the complaint fails to state sufficient facts to constitute a cause of action in equity, and (3) the complaint is not justiciable. Upon said motion to dismiss counsel have been fully heard, orally and by briefs.

This court is of the opinion that the motion to dismiss should be sustained upon each of the three grounds stated.

No contention is advanced that Mr. Byington is not presently an employee of the Central. He alleges that he is "on leave of absence". In his letter to the superintendent (Exhibit C to the complaint) he says: "my seniority as a Conductor & Trainman are protected as provided by both the Conductors and Trainmen's Agreements, which is a matter of record; your file R–4765 should so reflect this." Upon oral argument his counsel disclaimed any contention that Mr. Byington is not subject to the contract but insisted that he is not subject to the working rules. A furloughed employee is still an employee. Hundley v. Illinois Central Railroad Company, 272 F.2d 752 (6th Cir. 1959). By the same token, an employee on leave of absence is still an employee. Mr. Byington has so regarded himself. By Article 31 above quoted, the Brotherhood and the Central saw fit to restrict representatives of employees at discipline investigation to "one or two employees of their own selection" and the complaint alleges that Mr. Byington for a long period of time has represented employees during such investigations.

Section 3 of the Railway Labor Act, 45 U.S.C.A. § 153, First (i), confers jurisdiction on the National Railroad Adjustment Board to hold hearings, make findings and to enter awards in all disputes between carriers and their employees "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * *" and it now seems settled that courts do not have power to adjudicate disputes in-

volving such interpretation when the Adjustment Board has not acted. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); Pennsylvania R. Co. v. Day, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422 (1959); Union Pacific R. Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959); Rose v. Great Northern Railway Company, 268 F.2d 674 (8th Cir. 1959); Hundley v. Illinois Central Railroad Company, supra.

The Day case teaches that even retired employees must not be allowed to bypass the Board specially constituted for hearing railroad disputes whenever they deem it advantageous to do so. It would seem that this doctrine applies equally to employees on leave of absence. The Day case restated the now generally recognized concepts that the Board was established as a tribunal to settle disputes arising out of the relationship between carriers and employees; that Congress entrusted an expert administrative board with the interpretation of collective bargaining agreements; that uniform administrative interpretation is of great importance reflecting the needs and fair expectations of the railroad industry for which Congress has provided in effect a charter for its internal government; that a discharged employee may challenge the validity of his discharge before the Board, seeking reinstatement and back pay; and that "since the Board has jurisdiction, it must have exclusive primary jurisdiction."

In order to remove this case from the general rule as to the exclusiveness of jurisdiction of the National Railroad Adjustment Board plaintiffs point to Section 2 of the Act, 45 U.S.C.A. § 152, Third, which reads:

"Representatives, for the purpose of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier",

and to the case of Texas & N. O. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034 (1930). Plaintiffs point particularly to the statutory language "and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives." This court cannot read in this complaint a case against the defendant for attempting in any way to interfere with, influence, or coerce its employees "in its [their] choice of representatives." Should the plaintiffs' apprehensions materialize and Mr. Byington be fired that would not mean that he could not continue as Chairman of the General Grievance Committee, nor would such firing have any effect upon the Brotherhood's status as bargaining representative of the craft of Railroad Trainmen employed by the defendant. He may still be the chosen representative of the Brotherhood without any effort on defendant's part to interfere with that choice. At most, or at worst, as long as the present schedule agreement stands he could not classify as an employee to attend and represent fellow employees at discipline hearings, but under that agreement any other employee could be selected including the local chairman or any other official or representative of the Brotherhood. The Texas & N. O. R. Co. case, supra, was for the courts rather than the Adjustment Board because there the carrier was actively interfering with the choice of representatives by its employees by instigating the formation of a company union. That case distinguishes itself for us by the use of this language:

"The Railway Labor Act of 1926 does not interfere with the normal

exercise of the right of the carrier to select its employees or to discharge them. The statute is not aimed at this right of the employers but at the interference with the right of employees to have representatives of their own choosing." p. 571, 50 S.Ct. p. 427.

■ Of course, we are not presently dealing with the merits or demerits of the charge against this employee. We are dealing with the question of jurisdiction. The disputes existing between plaintiffs and defendant as to whether this employee is subject to discipline while upon a leave of absence status and as to whether he is guilty or not guilty of the charges preferred are disputes "growing out of * * * the interpretation or application of agreements concerning rates of pay, rules, or working conditions" and should be "handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes", and "failing to reach an adjustment in this manner * * * referred by petition of the parties or by either party to the appropriate division of the Adjustment Board * * *." 45 U.S.C.A. § 153, First (i). This dispute involves a reading and interpretation of the collective bargaining agreement and consequently is within the sole jurisdiction of the Railroad Adjustment Board. Bennett v. Progress Lodge 992, etc., 159 F.Supp. 93 (D.C.Mass.1958). Should the inquiry eventuate in discharge under the authorities cited above the employee would have his option to take the dispute to the Adjustment Board or to accept his discharge as final and sue in the courts. Moore v. Illinois Cent. R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941).

■ Nor does the complaint allege facts sufficient to constitute a cause of action in equity. No irreparable injury either to the Brotherhood or to Mr. Byington appears. It should not be assumed that the processing of this type dispute in the manner contemplated and commanded by the schedule agreement and by the Railway Labor Act will result in injustice to anyone. Should the employee be acquitted of the charges no harm would result. Should he be discharged the Brotherhood will function as heretofore as the chosen representative of defendant's employees retaining this employee as its General Chairman if it so desires. The absence of the right of supersedeas would not irreparably damage this employee particularly since he is now on a no pay status. Any deprivation of seniority, if wrongful at the lower levels, would presumably be corrected by the Adjustment Board. In a case quite analogous the Supreme Court of Georgia has said:

"Applying the principles stated in the foregoing divisions of the syllabus, we think that, from a consideration of the allegations of fact contained in the petition together with the reasonable inferences to be drawn therefrom, the conclusion is ineluctable that the plaintiff has not shown himself entitled to any of the injunctive relief for which he prays. The salient allegations of the petition for injunctive relief are that the investigation sought to be enjoined is ultra vires the authority of the defendant's master mechanic, and that the investigation will terminate in the plaintiff's discharge from the defendant's employ with the concomitant loss of his seniority privileges, the loss of his wages for a period of two years pending a review of the investigation by the Railroad Labor Board, and the instillation of the other employees with such fear of the defendant that he will be unable to secure their testimony on the trial of his claim for personal injuries against the defendant. These are not allegations of facts supportive of the plaintiff's averred conclusion that he will be irreparably damaged, but the averment of his trepidations inspired by conjecture. Presumptively, the investigation is, according to the tenor

of the notice of it, being held pursuant to the plaintiff's contract of employment, and is legal, having not been shown to be otherwise; and, being legal, we must assume, nothing more appearing, that it will be conducted in an entirely legal fashion with an attendant legal result. Of such a result the defendant may not complain whatever be the consequences." Seaboard Air Line R. Co. v. Wilkinson, 216 Ga. 338, 342, 116 S.E.2d 588, 592 (1960).

While conspiracy is an ugly word and always excites attention, the mere use of the attention, the mere use of the word does not insure that a cause of action has been stated. "Granting that the allegations of the plaintiff are sufficient to sustain the conclusion of conspiracy, there could be no actionable conspiracy growing out of the exercise, in a lawful manner, of the legal right to discharge the plaintiff." Lambert v. Georgia Power Co., 181 Ga. 624, 628 183 S.E. 814, 817 (1936).

"The averment of a conspiracy in the declaration does not ordinarily change the nature of the action, nor add to its legal force or effect. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done wrongfully. Where damage results from an act which, if done by one alone, would not afford ground of action, the like act would not be rendered actionable because done by several in pursuance of a conspiracy." Lambert v. Georgia Power Co., supra.

The use of the word "conspiracy", in which there is no magic, coupled with an allegation of violation of a statute (45 U.S.C.A. § 152, Third) will not serve to give to this court in the first instance jurisdiction over a controversy of which the Board has exclusive primary jurisdiction. It was so held in Crusen v. United Air Lines, 141 F.Supp. 347, 354 (D.C.Colorado, 1956), affirmed 10 Cir., 239 F.2d 863, in which a motion like this to dismiss for want of jurisdiction was sustained. Likewise, in Alabaugh v. Baltimore & Ohio Railroad Company, 222 F.2d 861 (4th Cir. 1955), it was held that a petition of employees to restrain their employer from discharging them was properly dismissed for lack of jurisdiction for failure of the employees to exhaust their administrative remedies before the Board "which has been given by Congress primary original jurisdiction over controversies of this sort." p. 864.

The case here involves the rights and duties of the employee, Mr. Byington, under a union shop agreement arrived at by collective bargaining. It involves the interpretation of that agreement to ascertain its meaning with respect to what duties, if any, this employee, on leave of absence as he was, continued to owe his employer and whether he is still subject to the disciplinary procedure set up under Article 31 "Investigations and Discipline". The carrier insists that the employee is subject to Article 31. The employee and Brotherhood insist that he is not. If the parties adhere to their present contentions and if discipline should be applied to the dissatisfaction of plaintiffs they have a perfect right to refer the dispute to the Board (45 U.S. C.A. § 153 First (j). As was said in Alabaugh v. Baltimore & Ohio Railroad Company, supra, at p. 864, "the interpretation of that agreement and the rights and grievances of employees thereunder are just the sort of matters that Congress intended to be handled in the first instance by the National Railroad Adjustment Board."

Accordingly, the temporary restraining order issued by this court October 30, 1961 at 12 o'clock noon is hereby dissolved, and the complaint is hereby dismissed.