BROTHERHOOD OF RAILROAD
TRAINMEN and B. Grady
Byington, Appellants,

v.

CENTRAL OF GEORGIA RAILWAY
COMPANY, Appellee.

No. 19429.

United States Court of Appeals
Fifth Circuit.

June 28, 1962.

Rehearing Denied Aug. 8, 1962.

E. S. Sell, Jr., Macon, Ga., Wayland K. Sullivan, Cleveland, Ohio, John D. Comer, Macon, Ga., for appellants.

Julian C. Sipple, Savannah, Ga., H. D. Russell, Macon, Ga., John B. Miller, Savannah, Ga., John B. Harris, Jr., Macon, Ga., for appellee.

Before BROWN, WISDOM and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This case presents again questions under the Railway Labor Act, 45 U.S.C.A. § 151 et seq. The District Court without ever hearing any proof, but as the briefs reflect after obviously hearing a lot of extrinsic evidentiary details about the background of the case, held that the complaint should be dismissed on three grounds. First, it was a matter exclusively for the Railway Adjustment Board. Second, the complaint did not state a claim, F.R.Civ.P. 12(b), 28 U.S.C.A. And third, it was not justiciable. We conclude that the Court was partly right and partly wrong. We therefore reverse and remand.

As the facts are set forth in considerable length in the opinion below we may capsulate them severely here. Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co., M.D.Ga.1961, 202 F.Supp. 324. The plaintiffs were the Brotherhood[1] and Byington, the Chairman of the General Grievance Committee acting for Trainmen employed by the Railroad.[2] Byington, a long time employee of the Railroad, but on a leave of absence from it, is serving as full time representative of the Brotherhood. The thing which precipitated the suit was a notice sent by the Railroad to Byington notifying him to appear at an investigation to be held by the Superintendent at a fixed time (subsequently extended by agreement) under Article 31 of the Trainmen's Schedule Agreement.[3] The charge against Byington was that as an *employee* of the Railroad, his efforts "to prevent or discourage employees of the [Railroad] * * * from making settlement claims involving personal injuries," and his "improperly making unsolicited calls on persons for the purpose of inducing * * * lawsuits against" the Railroad constituted "gross disloyalty to the [Railroad] by inciting and promoting lawsuits against the company * * *."

The complaint, constructed in two counts which do not really distinguish precisely between the two distinctive rights involved as we see it, then went on to assert two main claims. First, Byington was not such an "employee" as to be subject to the underlying Working Rule 702 so he was not under any duty of loyalty and fidelity to the Railroad.[4] Second, the Railroad was, in effect, doing this "pursuant to a plan and scheme" of the Railroad and its officials "for the purpose of discrediting the [Brotherhood and Byington] in the performance of their duties as craft representative, and

1. Brotherhood of Railroad Trainmen.

2. Central of Georgia Railway Company.

3. Article 31 provided: "Investigations and Discipline: No trainmen * * * will be demerited, suspended, or discharged without a fair and impartial trial before the * * * Superintendent. They will be allowed to be present and hear the evidence. If desired, they may have one or two employees of their own selection with them * * *.

   "Upon request, the General and Local Chairmen will be furnished with a copy of the investigation where discipline is applied."

4. As another example of information not disclosed by the complaint which was dismissed on its own face, but obviously relating to the merits and set forth along with much other material in the Railroad's brief (and presumably considered by the District Court) was this Rule 702:

   "Disloyalty, dishonesty, desertion, vicious or uncivil conduct, incompetency * * * is sufficient cause for dismissal."

as General Chairman, respectively, under the * * * Railway Labor Act * *." The complaint continued to charge more specifically that this disciplinary hearing leading to threatened and probable dismissal was "for the purpose of interference, influence and coercion" in the choice or designation by the Trainmen of their bargaining representatives under 45 U.S.C.A. § 152, Third.[5] Then in the most direct and positive terms the complaint set forth that the Railroad "by its charges and the proposed investigation of * * * Byington, intends to dismiss * * * Byington as an employee, and thereby to disqualify him as a representative of employees at investigations * * * and thereby * * * hamper, impede and hinder the [Brotherhood and Byington] in the performance of their duties as craft representative and as General Chairman, thus interfering, influencing and coercing the trainmen employees in their free choice of their craft representative and their General Chairman."

It simplifies discussion to refer to the first as the Byington Claim and the second as the Representation Claim. Indeed, we think that the underlying error below was the Judge's failure clearly to distinguish between the two so that he could see just what was, and what was not, involved.

█ The Byington Claim involves Byington's personal rights and, conversely, his personal duties as an employee. It is, in effect, that the Railroad's threatened action deprives him of personal rights as an "employee" of the Railroad. Within the context of that personal claim, the question whether, while on leave of absence, he was really an employee for all purposes—including the Work Rules, see note 4, supra—or whether he had some modified status entitled him to some

fringe benefits but without further obligations, cf. Hundley v. Ill. Central R. Co., 6 Cir., 1959, 272 F.2d 752, was a matter beyond the jurisdiction of the Court. This was, as Judge Bootle so correctly held, 202 F.Supp. 324 at 326, a dispute between the Railroad and its employee "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * *," 45 U.S.C.A. § 153, First (i). Consequently, the interpretation of the contract—whether written or as amplified by existing railroad customs, practices and usages of the parties—the determination of Byington's status as an "employee" and the nature and extent of his duties as an "employee" *vis-a-vis* the Railroad, was exclusively the responsibility of the Railroad Adjustment Board. Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Order of Railway Conductors v. Pitney, 1946, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318; Union Pacific R. Co. v. Price, 1959, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460; Pennsylvania R. Co. v. Day, 1959, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422.

That means that Byington may not have recourse to a court injunction to prevent the Railroad from violating *his* rights simply as an employee — the Byington Claim — no matter how flagrant or wrongful such actions are under the contract of employment.

█ But quite a different thing is presented in the Representation Claim. It must be tested by different standards Moreover, the relief to be accorded may not be any less than reasonably required even though it might mean that Byington, in a personal way, might reap some of the benefit of the judicial decree and thereby obtain indirectly some of the

---

5. 45 U.S.C.A. § 152, Third: "Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. Representa-

tives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier."

benefits we hold he may not secure directly.

■ Considering that a complaint must be read in the light of the principles recently restated in Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L. Ed.2d 80, and so often reiterated by us almost to the point of despair,[6] we think that a direct, positive charge is made that the purpose of the Railroad in the ostensible disciplinary investigative proceeding is to thwart Byington's (and the Brotherhood's) effectiveness as a collective bargaining agent for the Trainmen. Whether this can be established by evidence is quite a different thing. But at this stage, on the pleadings only, and in advance even of evidence brought forward in receivable form on motion for summary judgment to establish that there is in fact no genuine controversy over the fact, the Trial Court could not determine the fact to be otherwise.

That reduces the question then to one of law. On that, we understand the Railroad's contention was this. The Railway Labor Act § 2, Third, 45 U.S.C.A. § 152, Third, note 5, supra, prohibits only the italicized acts by a carrier which "in any way interfere with, influence, or coerce the [Union] in its *choice* of representatives * * *" or any "interference, influence, or coercion * * * to prevent the *designation* by * * * employees as their representatives * * *." This argument presumably persuaded the District Court. Thus, the trial Court stated, even though Byington should "be fired that would not mean that he could not continue as Chairman of the General Grievance Committee, nor would such firing have any effect upon the Brotherhood's status as bargaining representative of the craft * * *. He may still be the chosen representative of the Brotherhood without any effort on [the Railroad's] part to interfere with that choice. * * *" 202 F.Supp. 324, 327.

■ But this is to misread both the charge made by the complaint and the purpose of the Railway Labor Act. The complaint, construed as it must be, is considerably broader than a contention that this will interfere with *choice* alone. The purpose of the disciplinary hearing leading to a predetermined purpose to discharge Byington is to discredit him as well as the Brotherhood as bargaining representatives. The Railway Labor Act is equally broad. And certainly it is not so narrow that while it is at pains to secure an untrammeled *choice* of bargaining representative, a carrier would nevertheless be free to frustrate and undermine the effectiveness of such bargaining agent by securing his discharge for unfounded, false or baseless charges. The pioneer decision of Judge Hutcheson in Brotherhood of Railway and Steamship Clerks v. Texas & New Orleans R. Co., S.D.Tex., 1928, 24 F.2d 426, later affirmed by the Supreme Court in Texas & N. O. R. Co. v. Brotherhood of Railway and Steamship Clerks, 1930, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034, infused vitality into the Act to make certain that bargaining agents be recognized and respected as such. See also Virginian R. Co. v. System Federation No. 40, etc., 1937, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789. If a carrier must recognize and bargain in good faith with the representative — and it surely must — then it is not free to destroy the process of collective bargaining and resolution of industrial grievances by wrongfully destroying the effectiveness of the chosen representative.[7]

6. E.g., Arthur H. Richland Co. v. Harper, 5 Cir., 1962, 302 F.2d 324 [No. 19125, April 27, 1962]; Millet v. Godchaux Sugars, Inc., 5 Cir., 1957, 241 F.2d 264, 265; Des Isles v. Evans, 5 Cir., 1952, 200 F.2d 614, 615.

7. While we may assume, arguendo, that it is permissible for a bargaining agreement to provide, as Article 31 of the Train-men's Schedule Agreement does, that the representative in an investigation must be a fellow employee, Byington's status in that capacity is no less a representative of the Brotherhood than in other bargaining or grievance activities required under the Act. Consequently on the hypothesis of the wrongful motivation asserted in the complaint, it is no answer to state, as

■ If this is really the objective of the Railroad's plan, it is obviously a violation of the Railway Labor Act. As such, the Courts are open to grant appropriate injunctive relief.[8] And, of course, once such motivation is established as a fact, the public interest, if nothing else, would make injunctive relief appropriate if not compelled.

■ The Court, therefore, would have jurisdiction of the charge adequately pleaded in the Representation Claim if the facts bear it out. It is thus a situation in which determination of the Court's jurisdiction will likely be simultaneous with the determination of the merits. In that process, we may emphasize only two things at this stage. On the one hand, status as bargaining representative does not insulate Byington as an employee from lawful disciplinary action. Cf. N.L.R.B. v. Birmingham Publishing Co., 1958, 5 Cir., 262 F.2d 2, 9. On the other hand, the Railroad may not use the disciplinary proceedings as a guise for thwarting, or frustrating, or undermining the effectiveness of the Brotherhood, or Byington as its agent, in their statutory responsibilities as bargaining representatives. And in passing on the motivation for the disciplinary hearing, the Court may inescapably find itself in the position of necessarily passing on Byington's legal status as an employee, to his benefit or detriment, and the extent to which he therefore owes a duty of fidelity. In other words, the determination of the Representation Claim might inevitably mean judicially passing on the very merits of the Byington Claim which we have held is within the exclusive jurisdiction of the Railway Board of Adjustment so far as his personal rights are concerned.

We think it appropriate to point out, as we have on many previous occasions, that we have passed only on bare bones pleadings. Nothing said or unsaid is, or is to be understood as, an expression, or even an intimation of our views on what the decision should or must be. That depends on the evidence either on a trial or on summary judgment or similar proceedings short of a full-blown trial demonstrating that there is no genuine issue of fact. Camilla Cotton Oil Co. v. Spencer Kellogg & Sons, Inc., 5 Cir., 1958, 257 F.2d 162, 167; Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690, 693. This case, however reveals again— what can so easily be seen from the vantage of an appellate Court, though understandably obscured by the overpowering pressures of congested dockets in the trial Court—that in these matters of such public importance, it is often an unsure thing to elucidate decisions of like import in the unavoidably academic atmosphere of mere pleadings or even a stipulated agreed statement in terms of what the lawyers conceive the problem to be, rather than what the nuances of the facts make it out to be, Public Affairs Associates, Inc. v. Rickover, 1962, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604; Kennedy v. Silas Mason Co., 1948, 334 U.S. 249, 257, 68 S.Ct. 1031, 92 L.Ed. 1347; and see Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523, 526, reh. den. 289 F.2d 939; Chapman v. Hawthorne Flying Service, 5 Cir., 1961, 287 F.2d 539, 541. Cf. United States v. Diebold, 1962, 82 S.Ct. 993, 8 L.Ed.2d 176.

Consequently, as to the Byington Claim standing by itself, the District

---

did the trial Judge, that this was not harmful since some other employee could be selected. 202 F.Supp. 324, 327.

**8.** See the interesting analysis by Judge Friendly in Chicago, R. I. & Pacific R. v. Switchmen's Union of North America, 2 Cir., 1961, 292 F.2d 61; Akron Canton & Youngstown R. Co. v. Barnes, 7 Cir., 1954, 215 F.2d 423; American Airlines, Inc. v. Air Line Pilots Assn., S.D.N.Y., 1958, 169 F.Supp. 777, and see

especially cases cited in note 3, p. 786 sustaining injunction granted to a union to forbid action by a carrier contrary to § 6 or other sections of the Act; Brotherhood of Ry. Trainmen v. N. Y. Central Ry., 6 Cir., 1957, 246 F.2d 114; Railroad Yardmasters of America v. Pennsylvania R. Co., 3 Cir., 1955, 224 F.2d 226; Order of R. Conductors & Brakemen v. Switchmen's Union of North America, 5 Cir., 1959, 269 F.2d 726, 728.

Court's judgment of dismissal is affirmed, but in all other respects the case must be remanded for further and other consistent proceedings.

Affirmed in part and reversed and remanded in part.