James Robert McCARTHY, Frank Richard Newcomb, Paul O'Riley, and Railway Labor Executives' Association, Plaintiffs,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, Defendant.

Civ. A. No. 88–1551–Mc.

United States District Court, D. Massachusetts.

May 1, 1989.

John O'B. Clarke, Jr. and L. Pat Wynns, Highsaw & Mahoney, P.C., Washington, D.C., and Robert T. Naumes, Malone & Naumes, Boston, Mass., for plaintiffs.

Jonathan I. Saperstein and Sally D. Garr, National R.R. Passenger Corp., Washing-

ton, D.C., William Shaw McDermott and Robert B. Allensworth, McDermott & Rizzo, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

McNAUGHT, District Judge.

This matter comes before the Court on the parties' cross-motions for summary judgment. After the hearing, the matter was taken under advisement.

In the amended complaint, plaintiffs allege that defendant, National Railroad Passenger Corporation ("AMTRAK"), has violated the Railway Labor Act ("RLA") by taking reprisals against certain Amtrak employees who left their jobs at the Boston Engine Terminal on May 24, 1988. Defendant Amtrak asserts that the employees engaged in illegal strike activity in protest of the institution of a drug testing policy by defendant. The alleged reprisals included the discharge of plaintiff McCarthy, an employee of Amtrak who had been spokesperson for United Shop Crafts, an organization of the local chairmen of the seven shop craft union organizations at the Boston Engine Terminal which was formed to facilitate communications between the unions and management on issues concerning the unions. Defendant says that McCarthy had called a strike on May 24, 1988 in protest of the Amtrak drug testing policy. The alleged reprisals also included the scheduling by Amtrak of investigations of McCarthy and other union officers, including plaintiffs Newcomb and O'Riley, as well as the issuance of warning letters to all employees who left their jobs in support of the strike. Plaintiffs now seek declaratory relief protecting them from interference with the rights that are conferred to them under the RLA, Section 2 Third and Fourth. 45 U.S.C. § 152, Third and Fourth.

The issues to be decided are whether Section 2 Third and Fourth provide a cause of action for plaintiffs under the facts of this case and whether this Court has jurisdiction to entertain this lawsuit. Having reviewed the papers and the relevant statutory and case law, we conclude that plaintiffs have failed to state a cause of action under these sections and that jurisdiction over this matter belongs to the Adjustment Boards pursuant to the statutory scheme provided under the RLA.

Section 2 Third of the RLA prohibits interference, influence and coercion with respect to the "designation" or "choice" of representatives. It reads:

Third. Designation of representatives.

Representatives, for the purposes of this Act shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purposes of this Act need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

45 U.S.C. § 152, Third.

Section 2 Fourth of the RLA, also allegedly violated by Amtrak, applies to the designation and choice of representatives and further prohibits employer interference with formation of the labor organization. It states:

Fourth. Organization and collective bargaining; freedom from interference by carrier; assistance in organizing or maintaining organization by carrier forbidden; deduction of dues from wages forbidden.

Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this Act. No carrier, its officers or agents, shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use

the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization, or to deduct from the wages of employees any dues, fees, assessments, or other contributions payable to labor organizations, or to collect or to assist in the collection of any such dues, fees, assessments or other contributions.

45 U.S.C. § 152, Fourth.

Plaintiffs claim that the RLA prohibits Amtrak from interfering with the rights guaranteed to them under the foregoing sections. Say plaintiffs, because Amtrak's disciplinary actions abridged those rights this Court has jurisdiction to entertain the present civil action. *See RLEA v. Boston & Maine Corp.*, 808 F.2d 150, 157 (1st Cir.1986), *cert. denied* — U.S. —, 108 S.Ct. 102, 98 L.Ed.2d 62 (1987). Whether this Court, in fact, has jurisdiction will depend in large part on whether the dispute at issue is a "major" or "minor" one.

■ The Supreme Court has said that disagreements that arise over the terms and conditions of employment are classified as either major or minor disputes. Major disputes involve a disagreement over the formation or modification in the collective bargaining agreement, while minor disputes involve a disagreement over the interpretation or application of existing agreements. *Elgin, Joliet and Eastern R.R. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289–90, 89 L.Ed. 1886 (1945).

■ The RLA imposes a system of mandatory adjustment through arbitration before the National Railroad Adjustment Board (or other Adjustment Boards established through collective bargaining) for the resolution of minor disputes. 45 U.S.C. § 153. The jurisdiction of the Adjustment Boards is exclusive. *See Trainmen v. Chicago River & Indiana R. Co.*, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957). Major disputes, on the other hand, are resolved

through a detailed process of negotiation, conciliation and mediation. *See* 45 U.S.C. Sections 152 Seventh, 156. When the major dispute processes have been exhausted or when a carrier fails to comply with process requirements, disputants may resort to self-help in the form of work stoppage actions. *See United Air Lines, Inc. v. Local 851, International Brotherhood of Teamsters*, 697 F.Supp. 616, 620 (E.D.N.Y.1988). The federal courts have jurisdiction to entertain cases involving disciplinary actions of those who engage in this kind of protected strike activity. *See RLEA v. Boston & Maine Corp.*, supra at 158.

■ Say plaintiffs, Amtrak's institution of its drug testing policy constituted a change in the rules and working conditions that had *not* been specifically bargained for and thus involved a major dispute about which Amtrak was obligated to bargain. 45 U.S.C. Sections 152 Seventh, 156.

Defendant says that the "warnings, investigations, and disciplinary actions" challenged are matters of employee discipline, thereby giving rise to a minor dispute subject to the exclusive jurisdiction of the Adjustment Boards. *See Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978).

We find defendant's argument to be more persuasive. First, relevant case law suggests disputes involving disciplinary matters are minor disputes within the exclusive jurisdiction of the Adjustment Boards. *Andrews v. Louisville & Nashville R. Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *see also Independent Union of Flight Attendants v. Pan American World Airways*, 620 F.Supp. 447 (S.D.N.Y.1985), *aff'd.*, 789 F.2d 139 (2nd Cir. 1986); *International Association of Machinists v. Northwest Airlines*, 673 F.2d 700 (3rd Cir.1982). Second, any procedural rights conferred to plaintiffs have been outlined in the collective bargaining agreements. These included the right to appeal to the tribunals established under the provisions of the RLA. (Hriczak Affidavit, ¶ 7). Thus, the present disciplinary dispute

"contemplates the existence of a collective bargaining agreement already concluded," see *Elgin* 325 U.S. at 723, 65 S.Ct. at 1290, and thereby adds further support to a finding that the dispute is minor.

Third, in a related case which involved the same parties, C.A. 87–2340–Mc, Judge Nelson entered a temporary restraining order against plaintiffs on September 24, 1987 and entered a consent order on September 29, 1987 for purposes of resolving a dispute over disciplinary actions taken against individuals engaged in an earlier work slowdown. In the consent order, the parties agreed to "expedite the arbitration process." (Consent Order of September 29, 1987, Nelson, J., p. 2, ¶ 3). From the language of the consent order, we infer that the parties recognized that disputes over discipline were to be resolved through arbitration, e.g., through the Adjustment Boards. The facts and circumstances of the earlier case and those of the present do not differ in any fundamental way. Each case involves the discipline of union members for having engaged in illegal strike activities and involves a dispute that can only be characterized as minor.

■ Plaintiffs have also failed to state a claim under Section 2 Third and Fourth. The Supreme Court has said that these statutes address primarily the "precertification rights and freedoms of unorganized employees." *Trans World Airlines, Inc. v. Independent Federation of Flight Attendants,* —— U.S. ——, ——, 109 S.Ct. 1225, 1234, 103 L.Ed.2d 456 (1989). Plaintiffs seek to assert rights under these sections of the RLA despite the fact that the unions have already been organized and certification has taken place. Post-certification judicial enforcement of Section 2 Third and Fourth should be limited to cases involving "a fundamental attack on the collective bargaining process" or "a direct attempt to destroy a union." *See International Association of Machinists v. Alaska Airlines,* 813 F.2d 1038, 1040 (9th Cir.), *cert. denied* —— U.S. ——, 108 S.Ct. 290, 98 L.Ed.2d 250 (1987). Such a rule, we believe, is more consistent with the RLA's purpose "to avoid any interruption to commerce or to the operation of any carrier engaged therein." 45 U.S.C. § 151a.

We perceive no significant threat to the union as a result of the actions taken by Amtrak against plaintiffs. The kind of harm to be suffered, if any, does not compare to that suffered by the union in *RLEA v. Boston & Maine,* supra at 153, where the defendant struck a fundamental blow to union activity and the collective bargaining process after employees undertook lawful strike activity after exhaustion of the RLA major dispute procedures. Here, plaintiffs have provided little or no evidence of the kind of invidious anti-union animus which would possibly give rise to a post-certification cause of action under Section 2 Third and Fourth. *See United Air Lines, Inc. v. Local 851, International Brotherhood of Teamsters,* 697 F.Supp. 616, 621 (E.D.N.Y.1988). We therefore reject plaintiffs' request for the extraordinary judicial intervention they seek.

We also reject plaintiffs' argument that this Court should adopt a new policy which prevents carriers from disciplining employees for engaging in strike activity over a dispute that the employees reasonably and honestly believed to be major. Citing *Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 385 n. 20, 89 S.Ct. 1109, 1119 n. 20, 22 L.Ed.2d 344 (1969), plaintiffs analogize Section 2 Third and Fourth of the RLA to Section 7 of the National Labor Relations Act ("NLRA"), which essentially gives employees the right to join or assist labor organizations, to bargain collectively, and "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. This would include the right to protest working conditions that employees reasonably and honestly believe are unsafe. *See NLRB v. City Disposal Systems,* 465 U.S. 822, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984). They effectively ask this Court to modify existing law by applying the rationale behind Section 7 of the NLRA to the present case where no determination as to whether the dispute at issue is minor or major has yet been made.

Plaintiffs, however, cite no precedent as a basis for the modification of existing law under the RLA. Further, defendant advises us that the Supreme Court has never recognized a private cause of action under Section 2 Fourth. Recognizing that the NLRA "cannot be imported wholesale into the railway labor arena" and that "even rough analogies must be drawn circumspectly, with due regard for the many differences between the statutory schemes," *Jacksonville Terminal Co.,* supra at 383, 89 S.Ct. at 1118, we decline to apply NLRA policies to the facts of this case. Moreover, we would feel uncomfortable leaving it to the unions to decide arbitrarily whether a dispute is major so that they may take the kind of concerted action that might otherwise be prohibited under the RLA. Such a determination is best left to administrative bodies like the Adjustment Boards which are presumably competent to make an intelligent, impartial decision on the issue.

The dispute giving rise to this action is minor. This Court therefore lacks jurisdiction over the subject matter. In addition, plaintiffs have failed to state a cause of action under Section 2 Third and Fourth. Accordingly, the complaint is dismissed. Summary judgment is granted in favor of defendant, Amtrak.