**Scott DAVIES, Plaintiff–Appellant,**

v.

**AMERICAN AIRLINES, INC.,
a Delaware corporation,
Defendant–Appellee.**

No. 90–5231.

United States Court of Appeals,
Tenth Circuit.

July 13, 1992.

Gary G. Grisso (Joe L. White, with him, on the brief), Collinsville, Okl., for plaintiff-appellant.

Reuben Davis (Frederic N. Schneider, III and Kimberly A. Lambert, with him, on the brief), Boone, Smith, Davis, Hurst & Dickman, Tulsa, Okl., for defendant-appellee.

Before ANDERSON and EBEL, Circuit Judges, and ANDERSON, Senior District Judge.*

EBEL, Circuit Judge.

This appeal arises out of a claim, based upon Oklahoma law, for wrongful termination of employment in violation of public policy. *See Burk v. K–Mart Corp.*, 770 P.2d 24, 28–29 (Okla.1989). Three issues are raised: First, is this state law action a "minor" dispute within the exclusive jurisdiction of an arbitral board under the Railway Labor Act ("RLA")? Second, does Oklahoma law provide a remedy for wrongful termination in violation of public policy where other remedies are available? Third, does Oklahoma law provide a remedy for wrongful termination in violation of public policy for employees who can only be terminated for "just cause"?

We conclude that this cause of action is not a "minor" dispute under the RLA and, hence, the district court had jurisdiction to decide the case. On the merits, we conclude that Oklahoma would recognize the tort of wrongful termination in violation of public policy even if other remedies are available to the employee and even if he can be terminated only for "just cause." Accordingly, we reverse the district court's grant of the Defendant's motion for judgment notwithstanding the verdict ("JNOV") and we remand to reinstate the jury verdict.

## FACTS

The Plaintiff, Scott Davies, was employed as a mechanic by the Defendant, American Airlines ("American"), in Tulsa, Oklahoma. His employment was governed by the terms of a collective bargaining agreement ("CBA") between American and the Transport Workers Union ("TWU"), the exclusive bargaining agent for American's mechanics. Under the CBA, Davies could be discharged only for "just cause."

Davies sought to change the mechanics' representation to the Aircraft Mechanics Fraternal Association ("AMFA"), a rival of the TWU. To this end, he placed an advertisement in a local newspaper announcing a debate between representatives of the two unions. American approached Davies after the publication of the advertisement and reprimanded him for using the words "American Airlines" in the advertisement without permission from American. According to American, the use of its name in the advertisement erroneously made American appear to be a sponsor of the debate. American's position was that the advertisement was false, in violation of its Employment Rule 21, and harmful to the welfare of the company, in violation of its Employment Rule 24. When Davies refused to acknowledge his alleged wrongdoing and refused to promise that he would not repeat it, American terminated his employment. In arbitration, it was found that Davies had violated American's rules and that, therefore, American had "just cause" to discharge him. However, the arbitrator did not address the issue of whether the discharge violated clearly established public policy and therefore was actionable under *Burk*.

Prior to the disposition of the arbitration, Davies sued American based upon *Burk*, which provides a right of action to employees who are discharged in violation of public policy. Davies argues that even if he did violate American's rules, thereby giving American "just cause" to discharge him, American's actual motivation for the discharge was not to stop his violations of its rules, but rather to stop his unionizing activity. Because public policy supports the right to select union representation, Davies argues, his discharge violated public policy and entitled him to recover under *Burk*. The jury agreed that American was motivated by anti-union animus and returned a verdict in favor of Davies.

American moved for JNOV on three bases. First, American argued, Davies' *Burk* action is a "minor" dispute under the RLA. Because the RLA vests mandatory and ex-

* The Honorable Aldon J. Anderson, Senior District Judge of the United States District Court for the District of Utah, sitting by designation.

clusive jurisdiction over "minor" disputes in an arbitral board, American argued, the courts are preempted from hearing such disputes. Second, American argued, *Burk* does not provide a cause of action for violation of a public policy which already has a remedy available for enforcement. Third, American argued, *Burk* is limited to "at will" employees and does not provide a cause of action for employees like Davies who can only be discharged for "just cause." The district court granted JNOV for American based on its last two arguments. Davies appeals that decision.

### I. RLA Preemption [1]

Although the district court's grant of JNOV was not based upon RLA preemption, American continues to urge this argument as a ground for affirmance. RLA preemption is jurisdictional. *See Zimmerman v. Atchison, T. & S.F. Ry.*, 888 F.2d 660, 661 (10th Cir.1989) (per curiam). Accordingly, we address this argument first.

■ The RLA provides an arbitral forum for the resolution of "disputes between an employee ... and a carrier ... growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. §§ 153 First (i) & 184.[2] Such disputes have been characterized as "minor" disputes. *See Andrews v. Louisville*

*& N. R.R.*, 406 U.S. 320, 321–22, 92 S.Ct. 1562, 1563–64, 32 L.Ed.2d 95 (1972).

In *Andrews*, the Supreme Court held that the arbitral remedy provided under section 153 of the RLA is mandatory and exclusive for "minor" disputes. *Id.* at 322, 325, 92 S.Ct. at 1564, 1565. Thus, if Davies' *Burk* action can be characterized as a "minor" dispute, then the courts generally lack jurisdiction to hear it. *Barnett v. United Air Lines*, 738 F.2d 358, 361 (10th Cir.) *cert. denied*, 469 U.S. 1087, 105 S.Ct. 594, 83 L.Ed.2d 703 (1984).[3]

The distinction between "major" and "minor" disputes was elaborated upon in *Consolidated Rail Corp. v. Railway Labor Executives' Association*, 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) ("*Conrail*"). "The distinguishing feature of [a 'minor' dispute] is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement." *Id.* at 305, 109 S.Ct. at 2481.

#### A. The Need for CBA Interpretation

American argues that Davies' *Burk* suit is a "minor" dispute because it requires interpretation of an existing CBA. Specifically, American argues that its defense to the suit—i.e., that Davies was fired for "just cause"—requires interpretation of the "just cause" provision of the CBA. Thus, American argues, this suit is preempted. *See Andrews*, 406 U.S. at 324,

---

1. By "preemption" we refer to forum preemption. As explained below, the RLA vests exclusive and mandatory jurisdiction over certain claims in an arbitral forum and gives the courts only extremely limited powers of review over decisions of the arbitral board. This doctrine is not the same as the doctrine of field preemption, which addresses whether Congress has explicitly or implicitly (by pervasive and comprehensive regulation) precluded states from regulating a particular area of conduct.

2. The RLA was extended to cover the airlines by 45 U.S.C. §§ 181 to 188. The mediation and arbitration procedures differ somewhat in the air carrier context as opposed to the railroad context. However, we have regularly looked to § 153 railway preemption cases in determining the scope of preemption in the air carrier context under § 184. *See, e.g., Barnett v. United Air Lines*, 738 F.2d 358, 361–62 (10th Cir.), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 594, 83 L.Ed.2d

703 (1984). Accordingly, we do not distinguish between the two contexts for purposes of preemption.

Although § 153 does not contain a comma after the word "grievances," we include the comma because it does appear in § 184, the air carrier statute.

3. Federal courts can, under some circumstances, review the findings and order of the arbitrator. *See* 45 U.S.C. § 153 First (q) (court can set aside order where the arbitrator fails to comply with requirements of RLA, lacks jurisdiction, or engages in fraud or corruption); *Barnett*, 738 F.2d at 362 (plaintiff can challenge propriety of arbitral decision if union's breach of duty of fair representation "seriously undermined the integrity of the arbitral process"). However, none of these grounds for federal court review in a "minor" dispute are at issue in the case at bar.

92 S.Ct. at 1565; *Zimmerman*, 888 F.2d at 662; *Barnett*, 738 F.2d at 361.

However, the Supreme Court rejected such an argument in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). *Lingle* involved a defense of preemption under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Under the LMRA, like the RLA, preemption occurs "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement." *Lingle*, 486 U.S. at 405–06, 108 S.Ct. at 1881. *Lingle* involved a plaintiff who alleged she was illegally discharged in retaliation for filing a workers compensation claim. The employer disagreed with that characterization and claimed that the plaintiff was fired for "just cause" under the CBA. *Lingle* held that the plaintiff's retaliatory discharge claim under the state workers compensation laws could be tried without interpreting the CBA. Accordingly, the Court held that the claim was not preempted notwithstanding the fact that "the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether [the employee] was fired for just cause." *Id.* at 408, 108 S.Ct. at 1883.

In *Marshall v. TRW, Inc., Reda Pump Division*, 900 F.2d 1517 (10th Cir.1990), we faced a similar situation where the plaintiff asserted he had been terminated for filing a workers compensation claim. The employer responded that the plaintiff was terminated for "just cause" under the CBA. The plaintiff responded that the "just cause" reason was pretextual. Applying *Lingle*, we held that a court could determine whether the plaintiff was terminated in retaliation for a workers compensation filing without interpreting the "just cause" provision of the CBA. *Id.* at 1521. Even if the employee violated the employer's rules, giving the employer "just cause" to discharge him, the question is whether the employer's motivation for the discharge was the rule violation or retaliation for an activity protected by the retaliatory discharge law. Accordingly, we held that the claim was not preempted by the LMRA. *Id.* Hence, interpretation of the "just cause" provision of a CBA is not necessary to resolve a retaliatory discharge suit.

■ Davies' *Burk* suit is essentially a retaliatory discharge suit. The gravamen of his action is that American's actual or primary motivation in firing him, irrespective of any "just cause" it may have had under the CBA, was to stop his unionizing activity. Thus, we hold, pursuant to *Lingle* and *Marshall*, that Davies' *Burk* action does not require interpretation of the CBA and is therefore not preempted by the RLA on that ground.[4]

American urges that *Lingle*, which dealt with the LMRA, is inapposite in the RLA context. However, we believe that the test articulated by *Lingle* for determining whether a dispute requires CBA interpretation is just as valid under the RLA as it is under the LMRA. At least four circuits have looked to LMRA cases such as *Lingle* to determine whether a claim involved CBA interpretation for purposes of RLA preemption. *See Deford v. Soo Line R.R.*, 867 F.2d 1080, 1087 (8th Cir.) (distinguishing *Lingle*), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989); *Beard v. Carrollton R.R.*, 893 F.2d 117, 122 (6th Cir.1989) (same); *McCall v. Chesapeake & Ohio Ry.*, 844 F.2d 294, 304 (6th Cir.) (Or-

---

**4.** Appellee has cited to us the recent Eighth Circuit case of *Calvert v. Trans World Airlines, Inc.*, 959 F.2d 698 (8th Cir.1992). However, we find that case inapposite. That case, unlike the one before us, involved a claim for intentional infliction of emotional distress and the Eighth Circuit concluded that claim could not be resolved without interpreting the CBA to determine if it justified or authorized the conduct at issue. If so, the tort claim would fail. Thus, the court concluded that the plaintiff's claims there "arise from the interpretation and applica-

tion of the [CBA], and the RLA preempts [such claims] as a minor dispute...." *Id.* at 700. The Tenth Circuit has drawn this same distinction, concluding that a claim for intentional infliction of emotional distress was preempted by § 301 of the Labor–Management Relations Act while recognizing that a retaliatory discharge claim would not be so preempted because it rests on a basis independent of the CBA. *Johnson v. Beatrice Foods Co.*, 921 F.2d 1015 (10th Cir.1990).

der on Rehearing) (same), *cert. denied,* 488 U.S. 879, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988); *Leu v. Norfolk & W.Ry.,* 820 F.2d 825, 830 (7th Cir.1987) (The "reasoning [of a pre-*Lingle* LMRA case] is equally applicable to the determination of whether a claim couched in terms of a state tort law actually arises under an RLA collective bargaining agreement.").

It is true, as the Supreme Court noted in *Andrews,* that RLA preemption is statutory whereas LMRA preemption is contractual. 406 U.S. at 323, 92 S.Ct. at 1564. However, we do not believe that affects the inquiry into whether a claim requires interpretation of a CBA.[5]

**B.** *"Minor" Disputes not Requiring CBA Interpretation: The "Omitted Case"*

■ American next argues that a dispute may be "minor" even where a claim does not require CBA interpretation.[6] In *Elgin, Joliet & Eastern Railway v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), the Supreme Court defined a "minor" dispute as one that

> relates *either* to the *meaning or proper application of a particular provision [of the CBA]* with reference to a specific situation *or* to an *omitted case.* In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of

those covered by the collective agreement, e.g., claims on account of personal injuries.

*Id.* at 723, 65 S.Ct. at 1290 (emphasis added). American argues that under *Burley* we must consider an "omitted case"—i.e., any claim "founded upon some incident of the employment relation ... independent of ... the collective agreement"—a "minor" dispute, preempted by the RLA.[7]

We disagree with American's "omitted case" argument for three reasons. First, *Burley,* to the extent that it can be read as holding that disputes not requiring CBA interpretation can be "minor" for preemption purposes,[8] appears to have been overruled by *Conrail.* The test developed by *Conrail* for whether a dispute is "minor" is limited to whether the dispute requires CBA interpretation. *Conrail,* 491 U.S. at 303, 109 S.Ct. at 2480.

Second, it would not make sense to extend RLA preemption to disputes that do not require CBA interpretation. As noted by Judge Posner of the Seventh Circuit, arbitrators have no particular expertise in cases that do not require CBA interpretation; thus "arbitration would have no advantage over adjudication in [such a] case." *Lancaster v. Norfolk & W. Ry.,* 773 F.2d 807, 816 (7th Cir.1985), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987).

---

**5.** Although the Ninth Circuit held that the statutory, as opposed to contractual, origin of the RLA affects the inquiry into whether a claim requires CBA interpretation, *Grote v. Trans World Airlines,* 905 F.2d 1307, 1309–10 (9th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 386, 112 L.Ed.2d 397 (1990), we respectfully disagree with the reasoning of that case.

**6.** Although American does not appear to urge this argument on appeal, it was urged below. *See* R. Doc. 76 at 5–10. We address this argument because it goes to our jurisdiction to hear this action.

**7.** The contention that "minor" disputes include those that do not require CBA interpretation arguably finds support in the RLA's grant of jurisdiction to the arbitral board for "disputes ... growing out of grievances, *or* out of the interpretation or application of [CBAs]." 45 U.S.C. § 184 (emphasis added). However, we

believe that the "grievance" language is redundant. "Grievances" have been defined as "controversies over the meaning of an existing [CBA] in a particular fact situation, generally involving only one employee." *Brotherhood of R.R. Trainmen v. Chicago River & Ind. R.R.,* 353 U.S. 30, 33, 77 S.Ct. 635, 637, 1 L.Ed.2d 622 (1957); *see also Lancaster v. Norfolk & W. Ry.,* 773 F.2d 807, 814 (7th Cir.1985) ("A 'grievance' is a claim of violation of the [CBA]."), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987). Thus, we do not believe that the RLA itself contemplates two distinct types of "minor" dispute.

**8.** *Burley,* which dealt with the powers of a collective bargaining agent, did not purport to define "minor" disputes for purposes of preemption. *Conrail,* which was decided forty-four years after *Burley,* noted that "[t]his Court has not articulated an explicit standard for differentiating between major and minor disputes." 491 U.S. at 302, 109 S.Ct. at 2479.

Third, to hold that every case "founded upon some incident of the employment relation" was a "minor" dispute would undermine the "major"/"minor" distinction. Virtually every dispute between an employer and its employees, including many disputes that are clearly "major," can be said to be "founded upon some incident of the employment relation." For example, it is clear that a dispute arising out of an attempt to secure or change a CBA is a "major" dispute. *Conrail,* 491 U.S. at 302, 109 S.Ct. at 2479; *Burley,* 325 U.S. at 723, 65 S.Ct. at 1289. However, such a dispute could also be characterized as "founded upon some incident of the employment relation." Thus, if such cases were considered "minor," the "major"/"minor" distinction would collapse.

For these reasons, we hold that "minor" disputes, for purposes of RLA preemption, are limited to those that require CBA interpretation.[9] Because Davies' *Burk* action does not require CBA interpretation, it is not a "minor" dispute, and accordingly it is not preempted from judicial resolution.

At least three other circuits have held that a dispute over an employer's disciplinary action that is alleged to result from the employer's wish to interfere with union activity would, if proven, not be "minor." *See Independent Union of Flight Attendants v. Pan American World Airways, Inc.,* 789 F.2d 139, 142 (2d Cir.1986) (per curiam) ("federal judicial intervention [would be] warranted ... where it is clear that the employer's conduct has 'been motivated by anti-union animus or ... an attempt to interfere with its employees' choice of their collective bargaining representative.'") (citation omitted); *Tello v. Soo Line R.R.,* 772 F.2d 458, 462 (8th Cir. 1985) (same); *Brotherhood of R.R. Train-*

*men v. Central of Ga. Ry.,* 305 F.2d 605, 609 (5th Cir.1962) (same).

In summary, we hold that Davies' action is not "minor" and therefore does not fall within the exclusive jurisdiction of the arbitration board. Thus we have jurisdiction to hear Davies' action.

## II. The Availability of *Burk*

The district court granted JNOV on two grounds which American continues to urge on appeal. First, the district court held that Oklahoma would not provide a *Burk* remedy where alternative remedies are available. Alternatively, the district court held that Oklahoma would not provide a *Burk* remedy for employees who could be discharged only for "just cause." We reject both of these conclusions.

### A. The Availability of Alternative Remedies

■ The district court held that Oklahoma law does not provide a remedy for discharge in violation of public policy under *Burk* where the discharged employee has another remedy available. Because Davies has a remedy available under the RLA, the district court held that he cannot maintain a suit under *Burk.*

Recently, the Oklahoma Supreme Court laid to rest this question, which had divided federal courts in Oklahoma. In *Tate v. Browning–Ferris,* 833 P.2d 1218 (1992), the Court clearly held that a *Burk* action is available notwithstanding the availability of other remedies. *Id.* at 1223.[10] We therefore hold under *Tate* that Davies can maintain a *Burk* suit notwithstanding the availability of other remedies.

### B. Burk *and "For Cause" Employees*

*Burk* granted a tort remedy as a "public policy exception to the at-will termination

---

**9.** We are aware of only one district court that has explicitly held that a dispute can be preempted as an "incident of the employment relation" where it does not involve CBA interpretation. *See Majors v. U.S. Air, Inc.,* 525 F.Supp. 853, 857 (D.Md.1981). We respectfully disagree with *Majors.*

**10.** *Tate* acknowledged that a remedy under *Burk* might be precluded by other remedial leg-

islation where the other remedies are intended to be exclusive. *Id.* at 1220, 1223. This is essentially the doctrine of field preemption. Because neither of the parties raised a field preemption argument, and because such an argument does not affect our jurisdiction over the subject matter of this case, we do not address this exception to *Tate.*

rule." 770 P.2d at 28. The district court held that an employee who can be fired only for "just cause" is not terminable "at will," and therefore cannot avail himself of *Burk*'s remedy. Because Davies could be terminated only for "just cause," the district court held, he could not sue under *Burk*.

The argument to limit *Burk* to "at will" employees is essentially a variant of the argument, addressed above, that *Burk* is unavailable where a discharged employee has an alternate remedy. Because Davies has a contractual remedy under the "just cause" provision of the CBA, American argues, Oklahoma would not grant him another remedy in the form of a *Burk* suit. Rather, American argues, Oklahoma intended *Burk* as a remedy only for those who would otherwise have no protection against discharge. This argument is belied by *Tate*, in which the Oklahoma Supreme Court sanctioned a *Burk* remedy for an employee who had federal and state statutory remedies. 833 P.2d at 1223.

*Burk*'s concern was not with providing a remedy for employees who otherwise would have none. Had this been *Burk*'s concern, the Court presumably would have granted a remedy to any "at will" employee who was terminated in bad faith. However, the court refused to imply such a restriction on discharge. *See* 770 P.2d at 27 (refusing to read implied covenant of good faith into "at will" contract). Rather, *Burk* was concerned that the contractual relation between an employer and employee might not adequately protect " 'society's interest in seeing its public policies carried out.' " 770 P.2d at 28 (quoting *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878 (1981)). This is why the Court limited the remedy to employees discharged in violation of "an established and well-defined public policy." *See* 770 P.2d at 29.

■ When an employer discharges an employee in violation of such a public policy, society is equally aggrieved whether the employee is "at will" or can be discharged only for "just cause." As explained by *Palmateer*, "parties to a contract may not incorporate in it rights and obligations which are clearly injurious to the public." 52 Ill.Dec. at 15, 421 N.E.2d at 878. Thus, whether the contract purported to provide grounds for the discharge or not, the contract could not provide a ground for discharge which is contrary to clear public policy and it is those discharges that trigger a *Burk* cause of action. Accordingly, we believe that Oklahoma would permit a *Burk* action by an employee who could be fired only for "just cause" under his employment contract.[11]

Our holding is supported by *Vannerson v. Board of Regents of the University of Oklahoma*, 784 P.2d 1053 (Okla.1989). In *Vannerson*, the Oklahoma Supreme Court applied *Burk* without inquiry into whether the plaintiff was an "at will" employee. The plaintiff in *Vannerson* appears to have had the benefit of a formal grievance procedure which limited the defendant's ability to terminate him. *Id.* at 1054. This is essentially the same type of limitation as that in the contract between Davies and American.[12] Notwithstanding this limita-

11. Admittedly, the Oklahoma Supreme Court has characterized *Burk* as an exception to the employment "at will" rule. *See, e.g., Tate,* 833 P.2d at 1223; *Burk,* 770 P.2d at 28. However, at other places in those opinions, the Oklahoma Supreme Court states the *Burk* rule more broadly. *See, e.g., Tate,* 833 P.2d at 1223; *Burk,* 770 P.2d at 29. Thus, we cannot say that the "at will" language in the opinions of the Oklahoma Supreme Court is dispositive.

12. The contract between Davies and American set out both a standard for discharge, "just cause," and a procedure for ensuring that the standard was satisfied in the event of a discharge. In *Vannerson,* we know only that there was a grievance procedure available in the event of a discharge. Although we do not know what standard the employer in *Vannerson* had to satisfy, the existence of a grievance procedure suggests the existence of some standard that precluded the employer from firing the plaintiff arbitrarily.

We use the phrase "at will" to designate an employment relation with no contractual restrictions on the grounds for termination—i.e., a relation in which the employer can arbitrarily fire the employee. Davies would define "at will" more narrowly. According to Davies, an employment relation is "at will" whenever there is no contractual term specifying a temporal duration of employment (e.g., one year). Under

tion on termination, *Vannerson* permitted the plaintiff's *Burk* suit. *See id.* at 1056 (remanding for retrial of one *Burk* claim where general verdict was based upon two *Burk* claims, one of which did not state adequate public policy ground).

In summary, given *Tate*'s rejection of the proposition that *Burk* is intended to provide a remedy only for employees who otherwise would have none, the fact that *Burk*'s reasoning applies with equal force to "at will" and "for cause" employees, and *Vannerson*'s application of *Burk* in a situation similar to that at bar, we believe that Oklahoma would not limit *Burk* to "at will" employees. Thus, we hold that the district court erred in concluding that Oklahoma would so limit *Burk*.

Because we hold that both of the grounds supporting the district court's grant of American's motion for JNOV are erroneous, we REVERSE that judgment and REMAND for reinstatement of the jury verdict.

Davies' definition, he might be "at will" notwithstanding the "just cause" limitation in his contract. Because we conclude that the Oklahoma Supreme Court would apply *Burk* to relation- ships that are "at will" in the sense that we use it, we do not address Davies' suggested definition of "at will."