BROTHERHOOD OF LOCOMOTIVE EN-
GINEERS DIVISION 269; Stephen Pi-
coni and 159 other members of the
Brotherhood of Locomotive Engineers,
Division 269, Plaintiffs–Appellants,

v.

The LONG ISLAND RAIL ROAD COM-
PANY; Thomas F. Prendergast, as Pres-
ident, and Dale C. Kutzbach, as Vice
President, of Labor Relations, Defen-
dants–Appellees.

No. 1284, Docket 95–9023.

United States Court of Appeals,
Second Circuit.

Argued March 27, 1996.

Decided May 20, 1996.

Vincent F. O'Hara, New York City (William P. Holm, Charles R. Sheard, William J. Placke, Holm Krisen & O'Hara, of counsel), for Plaintiffs–Appellants.

Roger J. Schiera, Jamaica, N.Y. (Roberta Bender, Acting General Counsel, The Long Island Rail Road Company, of counsel), for Defendants–Appellees.

Before NEWMAN, Chief Judge, OAKES, Senior Circuit Judge, and PARKER, Circuit Judge.

OAKES, Senior Circuit Judge:

Appellant Brotherhood of Locomotive Engineers Division 269 ("BLE") appeals from the order entered on October 19, 1995, by the United States District Court for the Eastern District of New York, Carol B. Amon, *Judge,* denying its motion for a preliminary injunction and dismissing its complaint against The Long Island Rail Road Company ("LIRR"). BLE sued LIRR for violations of the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* (1994) ("RLA"), and New York State Labor Law § 193 (McKinney 1986), arising out of LIRR's imposition of fines upon engineers who participated in an illegal strike. On appeal, BLE contests the district court's finding that the cause of action involved a minor dispute under the RLA and was therefore not within the court's subject matter jurisdiction. We agree with the district court that this dispute is minor for the purposes of the RLA. Accordingly, we affirm.

## BACKGROUND

On the morning of May 26, 1995, the 160 engineer-plaintiffs in this case failed to report to work. Their absence was an organized response by BLE to long delays in implementing a new collective bargaining agreement ("CBA") with LIRR and to the consequent failure to raise the engineers' pay for over three years. The engineers' strike disrupted morning rush hour service on the Friday of Memorial Day weekend, one of the railroad's heaviest travel days of the year. LIRR obtained a temporary restraining order later that same day, compelling the engineers back to work before the evening rush hour, and then initiated contempt proceedings when it became apparent that the engineers would not return in time.

After hearings had been held on the contempt action and other matters, LIRR notified BLE that it was charging the engineers with violating company work rules and would seek disciplinary action against them. Hearings on the charges were held by LIRR on June 7–13, 1995, and the engineers were found in violation of the work rule and disciplined in the form of a fine equal to five days' pay.

On September 12, 1995, BLE and LIRR reached an agreement on a new CBA that included a provision for settling the lawsuit and contempt action resulting from the May 26th strike. The agreement provided for BLE to confess judgment in the amount of two million dollars in exchange for LIRR's promise not to enforce the judgment if BLE did not engage in further unlawful work stoppages before the expiration of the CBA in 1999. The agreement further provided that "LIRR explicitly reserves any and all rights to disciplinary actions it may have against any individual members of the BLE relating to any such member's participation in the illegal work stoppage on May 26, 1995." The CBA became effective on September 21, 1995, after ratification by both parties.

On September 22, 1995, LIRR notified BLE that it intended to collect the fines imposed at the disciplinary hearing through payroll deductions. At that time, BLE had appealed the discipline to its first level of appeal, where the fines had been affirmed, but had not pursued its second level of appeal within the ten-day time period provided for by the CBA. After offering to submit the dispute over the fines to voluntary arbitration—an offer which LIRR refused—and be-

ing informed by LIRR that the payroll deductions would begin on October 12, BLE commenced the instant injunctive action on October 6, 1995.

The district court held a hearing on BLE's motion for a preliminary injunction on October 11, 1995, and dismissed the entire action for lack of subject matter jurisdiction five days later. The district court based the dismissal on its finding that the dispute between the parties was minor and therefore must be arbitrated before the National Railroad Adjustment Board pursuant to § 3 of the RLA, 45 U.S.C. § 153 (1994). The LIRR subsequently deducted one day's pay from each engineer's biweekly paycheck until the entire amount of the disciplinary fine had been collected.

On appeal, BLE argues that the district court erred (1) in characterizing the dispute over the disciplinary fines as a minor dispute rather than a major dispute requiring maintenance of the status quo through injunction; (2) in finding that LIRR's imposition of fines was "arguably justified" under the CBA's disciplinary provisions; and (3) in dismissing the pendent state law claim. We find no error in the district court's well-reasoned opinion that the instant case involves a minor dispute in which the imposition of fines was arguably justified by the CBA. We therefore affirm the dismissal of BLE's federal and state law claims.

## DISCUSSION

■ This case presents the frequently-posed question whether a particular conflict between unionized railroad workers and their employer is a "major" or "minor" dispute for the purposes of the RLA, 45 U.S.C. §§ 151 *et seq.* (1994). As neither party contests the district court's findings of fact on this issue, we are confronted solely with an interpretation of law, which we review *de novo*. *Aircraft Mechanics Fraternal Ass'n v. Atlantic Coast Airlines, Inc.,* 55 F.3d 90, 91 (2d Cir. 1995).

■ Although the RLA itself does not use the terms "major" and "minor" in its provisions, the legal distinction between these two types of disputes has been in force since the Supreme Court's decision in *Elgin, Joliet & Eastern Ry. Co. v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). In *Elgin,* the Court recognized that Congress drew a statutory distinction between those disputes concerning "rates of pay, rules or working conditions," 45 U.S.C. § 151a(4), which the Court termed major, and those "growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules and working conditions," 45 U.S.C. § 151a(5), which were termed minor. 325 U.S. at 722, 65 S.Ct. at 1289. The Court elucidated this distinction, defining major disputes as originating from

the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy.

*Id.* In contrast, a minor dispute

contemplates the existence of a collective agreement already concluded or ... a situation in which no effort is made to bring about a formal change in terms .... [and] relates either to the meaning or proper application of a particular provision[.]

*Id.*

■ The RLA establishes separate resolution procedures for these two forms of disputes, with major disputes requiring the "traditional voluntary processes of negotiation, mediation, voluntary arbitration, and conciliation[,]" *id.* at 725, 65 S.Ct. at 1291, and minor disputes subject to compulsory arbitration before the National Railroad Adjustment Board. *Id.* at 726–27, 65 S.Ct. at 1291–92. If a dispute is characterized as minor, a court cannot assert jurisdiction over the action nor can the parties seek judicial remedies such as an injunction. *Brotherhood of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.,* 373 U.S. 33, 38, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172 (1963) (stating that statute provides a "mandatory, exclusive, and comprehensive system" for resolving minor disputes which cannot be defeated by resort to another forum); *Independent Union of Flight Attendants v. Pan American World Airways, Inc.,* 789 F.2d 139, 141 (2d Cir.

1986) (adjustment boards "have exclusive jurisdiction over 'minor disputes' ").

Courts frequently encounter the threshold problem presented in this case: how to differentiate between major and minor disputes so as to determine the appropriate resolution procedure under the RLA. In *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) (*Conrail*), the Supreme Court answered this question with the following standard:

> [I]f an employer asserts a claim that the parties' agreement gives the employer the discretion to make a particular change in working conditions without prior negotiation, and if that claim is arguably justified by the terms of the parties' agreement (*i.e.*, the claim is neither obviously insubstantial or frivolous, nor made in bad faith), the employer may make the change and the courts must defer to the arbitral jurisdiction of the Board.

*Id.* at 310, 109 S.Ct. at 2484. The Court noted that this standard reflects "the '*relatively light burden* which the railroad must bear' in establishing exclusive arbitral jurisdiction under the RLA." *Id.* at 307, 109 S.Ct. at 2482 (emphasis added) (quoting *Brotherhood of Maintenance of Way Employees & Lodge 16 v. Burlington Northern R.R.*, 802 F.2d 1016, 1022 (8th Cir.1986)).

■ Applying the *Conrail* standard to the instant dispute, the district court found that LIRR's claim that it had an implied right under the CBA to impose disciplinary fines was neither frivolous nor obviously insubstantial, and that therefore the dispute was a minor one over which the district court had no jurisdiction. We find no reason to disturb this sound conclusion.

Our court has held that in order to meet *Conrail*'s "arguably justified" test, "an employer need demonstrate only that a reasonable trier of fact could adopt the employer's view of the contract." *Association of Flight Attendants v. United Airlines, Inc.*, 976 F.2d 102, 105 (2d Cir.1992). Here, LIRR contends that the CBA does not prohibit any particular forms of discipline but rather gives LIRR the flexibility to impose appropriate disciplinary remedies. LIRR has imposed a variety of disciplinary measures on members of BLE in the past, including the harsh penalties of suspension and dismissal. Given such a practice, we agree with the district court that the imposition of fines, clearly a less drastic form of discipline than dismissal, is arguably within the continuum of discipline that can be implied under the existing contract. *See Independent Union of Flight Attendants*, 789 F.2d at 141 (finding that minor disputes "include disciplinary disputes even if involving employee discharge"). LIRR's view of the CBA is sufficiently reasonable, therefore, to meet its "light burden" of demonstrating arbitral jurisdiction under *Conrail*.

BLE argues that the Supreme Court narrowed the "arguably justified" standard for determining a minor dispute in the recent decision in *Hawaiian Airlines, Inc. v. Norris*, —— U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). BLE reads the *Norris* opinion as articulating a new standard under which a dispute is minor only if it can be "conclusively resolved" by interpreting the CBA. According to BLE, it was error for the district court not to apply this new, more demanding standard in assessing whether LIRR's conduct created a minor dispute.

We disagree with BLE's reading of *Norris* for several reasons. First, the "conclusively resolved" language which BLE offers as a new standard actually comes from the *Conrail* case, 491 U.S. at 305, 109 S.Ct. at 2481–82, and is cited by the Court in *Norris* only to reaffirm *Conrail*'s definition of a minor dispute. —— U.S. at ——, ——, 114 S.Ct. at 2249, 2250. It does not seems to us that this usage establishes a more narrow standard, much less any new standard at all. Second, *Norris* does not consider the threshold question of what is a minor dispute, but rather addresses minor disputes in the context of RLA pre-emption of state law claims based on rights independent of the CBA. *Id.* Finally, the Court in *Norris* explicitly rejected the suggestion that its decision conflicted with *Conrail*, stating that *Conrail* "involved no pre-emption analysis" and that

> th[e] arguably justified standard was employed only for policing the line between major and minor disputes .... [and] said

nothing about the threshold question whether the dispute was subject to the RLA in the first place. *Id.* In light of these statements, and given the absence of a pre-emption issue in this case, we find *Norris* inapplicable.

We agree with the district court that "policing the line" of the minor dispute in this case requires a close call, and that BLE may ultimately prevail on the merits of its claims in arbitration. We must, however, abide by the directive of *Conrail* to turn disputes such as the one presented here over to arbitrators who, as "experts in 'the common law of the particular industry,'" are in a better position to interpret the provisions of the CBA than we are. 491 U.S. at 310, 109 S.Ct. at 2484 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 579, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960)); *see also Local 553, Transport Workers Union v. Eastern Air Lines, Inc.,* 695 F.2d 668, 675 (2d Cir.1982) (in minor disputes, the RLA "calls for the Adjustment Board to determine whether the carrier's action was permissible under the governing contract"). Therefore, we affirm the dismissal of BLE's RLA claim as outside the jurisdictional authority of the courts.

■ BLE renews on appeal its pendent state law claim, arguing that LIRR has violated New York State Labor Law § 193 (McKinney 1986). "When all bases for federal jurisdiction have been eliminated ..., the federal court should ordinarily dismiss the state claims." *Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir.1988) (dismissing state claim when court had no jurisdiction over RLA claim); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Accordingly, the district court did not err in declining to consider BLE's state law claim.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court dismissing BLE's claims for lack of subject matter jurisdiction.